FILED

07 AUG 20 AM 8:46

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSET MARKETING SYSTEMS INSURANCE SE4RVICES, LLC,<br><br>                    Plaintiff,<br>vs.<br><br>WILLIAM J. MCLAUGHLIN, JR.; THE MCLAUGHLIN FINANCIAL GROUP, LLC; and SENIOR RESOURCES SERVICES, LLC.,<br><br>                    Defendants. | CASE NO. 06cv1176 JM(MCc)<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY ADJUDICATION |

   Plaintiff Asset Marketing Systems Insurance Services, LLC. ("AMS") moves for partial summary adjudication of its copyright infringement and breach of contract claims. Defendants William J. McLaughlin, Jr., The McLaughlin Financial Group, and Senior Resource Services (collectively "McLaughlin") separately move for summary judgment or alternatively, for partial summary adjuciation, on all five claims alleged in the First Amended Complaint ("FAC"). All motions are opposed. For the reasons set forth below, the court grants in part and denies in part AMS' motion for partial summary adjudication and grants in part and denies in part McLauglin's motion for summary judgment or summary adjuciation.

## BACKGROUND

AMS is a field marketing organization located in San Diego, California. Richard M. Metcalfe II, "conceived and developed an educational program designed to guide and assist sales persons in their efforts to identify and meet persons who may have an interest in or need for life, annuity, and health care products." (FAC ¶8). Plaintiff AMS is the successor-in-interest to the allegedly copyrighted materials and trademarks. AMS provides marketing support to independent insurance agents throughout the United States. (Akerstein Decl. ¶2). Among other things, AMS creates "seminar based sales programs which are designed to generate leads for the sale of insurance products (life, annuity and health care products)." Id. In connection with its business, AMS is the proprietor of several copyrights including materials developed for a program entitled TEN WAYS SENIORS SCREW UP THEIR FINANCES (the "10 Ways Seniors Program"). Copyrights include registrations for the handouts, program binder, and the program invitations. (Pakerstein Decl. ¶4; Plaintiff's Exh. 1).

Defendant William McLaughlin, a certified financial planner residing in New Jersey, is an independent salesperson and the owner of co-defendants The McLaughlin Financial Group, LLC and Senior Resource Services, LLC. On July 25, 2002, McLaughlin entered into a non-exclusive License Agreement and an Agent Nondisclosure Agreement. (Plaintiff's Exhs. 8, 9). Among other things, the agreements generally provided for the non-disclosure of confidential information, an acknowledgment that intellectual property rights remain with AMS and are not transferred to McLaughlin, and that McLaughlin would return all of AMS's materials upon termination of the Agreements. Id.

Upon learning that McLaughlin was directing business to other insurance companies that did not provide AMS with an override commission, on September 13, 2005, AMS sent a letter to McLaughlin confirming that all licenses were canceled and requesting that McLaughlin return all proprietary materials, including the Ten Ways Seniors Program. (Plaintiff's Exh. 22). AMS requested in writing that McLaughlin

return all of AMS' materials. (Plaintiff's Exh. 13). AMS represents that McLaughlin returned some materials but did not return the original binder which contained the Ten Ways Seniors Program. McLaughlin represents that he returned all materials to AMS. (McLaughlin Decl. ¶20).

In winding up their contractual relationship, AMS requested that McLaughlin sign a statement acknowledging that he would not use AMS' materials. (Plaintiff's Exh. 15). When McLaughlin failed to respond to its request, AMS hired a private investigator to determine whether McLaughlin was still using AMS' materials. The Investigator attended one of McLaughlin's seminars on January 12, 2006. (Plaintiff's Exh. 17). The investigator was provided with a folder containing a program McLaughlin called "Ten Smart Ideas." (Plaintiff's Exh. 18). While the cover page of McLaughlin's "Ten Smart Ideas" is different from AMS' 10 Ways Senior Program, the next eleven pages identify certain topics and subtopics. These eleven pages are virtually identical. Each heading is in large capital letters and there are smaller letters identifying subtopics, leaving enough space for seminar attendees to take notes during the presentation. (Plaintiff's Exhs. 1, 18). At his deposition, McLaughlin testified that he already had printed up the Ten Smart Ideas materials and continued to use those materials until exhausted in late 2005.

AMS hired another investigator who attended one of McLaughlin's seminars on March 28, 2006 and was provided with a copy of McLaughlin's "Ten Smart Ideas" materials. (Plaintiff's Exh. 20). The materials used by McLaughlin on March 28, 2006 were different from the materials used on January 12, 2006. The ten pages following the title page expressed the same ideas as AMS' program but the ideas were expressed in the form of questions. For example, AMS' handout provides "1. WORKING CAPITAL *NOT* WORKING" (Plaintiff's Exh. 1), and McLaughlin's handout provides "DO YOU HAVE WORKING CAPITAL NOT WORKING FOR YOU?" (Plaintiff's Exh. 20). Besides the title heading of each page, the identified subtopics are identical and have the same basic look and feel as AMS' materials.

|   |   |
|---|---|
| 1 | AMS also represents that McLaughlin copied the invitations used by AMS to solicit and promote its programs. The invitations used by McLaughlin are substantially identical to the invitations used by AMS. (Plaintiff's Exhs. 6, 12, 16, 19). At his deposition, McLaughlin generally testified that he was not able to change anything with the invitations until the beginning of 2006 because they had already been ordered from the printer. (Plaintiff's Exh. 22, Depo. 236:4-18). AMS also submits copies of the proofs to the printers which show that McLaughlin approved for printing the virtually identical invitation on September 15, 2005 and May 18, 2006. (Plaintiff's Exhs. 16, 21). |

The FAC sets forth five causes of action for copyright infringement, trademark infringement, breach of contract, unfair competition, and declaratory judgment. AMS moves for partial summary adjudication on the copyright infringement and breach of contract claims. McLaughlin moves for summary judgment or summary adjudication on all claims asserted in the FAC.

## DISCUSSION

**Legal Standards**

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific

facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the <u>moving party</u> bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992)).

**The Breach of Contract Claim**

In order to prevail on a breach of contract action, AMS must establish (1) a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages. <u>Poseidon Development, Inc. v. Woodland Lane Estates, LLC</u>, 152 Cal.App.4th 1106 (2007). AMS moves for partial adjicuation of the first and third elements only. Count 3 for breach of contract alleges that McLaughlin breached Paragraph B of the License Agreement which provides:

> Licensee shall have no right to copy, prepare derivative works, or distribute the Licensed System without the express written permission of METCALFE.

(Plaintiff's Exh, 8).

In reference to the first element, not seriously disputed by McLaughlin, AMS submits evidence that the parties entered into a License Agreement, (Plaintiff's Exhs. 7, 8) and that the agreement limits McLaughlin's ability to copy AMS's materials as set forth in Paragraph B, above.

In reference to the third element, AMS has come forward with evidence to show that McLaughlin, after termination, continued to use substantially similar handouts to

those copyrighted handouts of AMS.[1] This is particularly true when AMS' handout, (Plaintiff's Exh. 1), is compared to the handout used by McLaughlin on January 12, 2006. (Plaintiff's Exh. 18). While the title page is different, the following 10 pages are verbatim identical. The layout, size of print differential between the page's heading and the following subtopics, and text are virtually identical. The 10 pages are laid out in precisely the same order and pagination. On the element of breach, the identified evidence gives rise to an inference that McLaughlin copied, distributed, and continued to use, at least through January 12, 2006, significant portions of the handout in violation of Paragraph B of the Licensing Agreement. McLaughlin, does not dispute that the handouts he used up to about January 12, 2006, were verbatim copies of the handouts.

In reference to the March 28, 2006, handouts, (Plaintiff's Exh. 20), the parties dispute whether infringement occurred with respect to the modifications made to AMS' ten points program by McLaughlin. For the reasons set forth in the following Infringement Section, the court finds that it is without substantial controversy that the March 28, 2006 handout infringes AMS' copyright.[2]

Finally, the court grants McLaughlin's motion for summary adjuciation on whether McLaughlin breached the Licensing Agreement by failing to return the original binder containing the 10 Ways Senior Program to AMS. AMS, the party who has the burden of proof at the time of trial, has failed to present any evidence on this issue. Accordingly, the court finds that it is without substantial controversy that McLaughlin did not breach the Licensing Agreement by failing to return the original binder to AMS after termination of their contractual relationship.

In sum, the court finds that there is no genuine issue of material fact, and without substantial controversy as established by AMS, that (1) the parties entered into the

---

[1] The handouts were distributed to the attendees of the seminars.

[2] At the time of oral argument, both parties represented that a breach of contract would be established if the March 28, 2006 ten point handout infringed AMS' copyright.

1  Licensing Agreement at issue; (2) McLaughlin breached Paragraph B of the Licensing
2  Agreement when he distributed the January 12, 2006 and March 28, 2006 handouts;
3  and (3) McLaughlin returned the original binder containing the 10 Ways Senior
4  Program to AMS.

**The Copyright Claims**

Five distinct sets of McLaughlin's documents are at issue: (1) the ten point presentation used at the January 12, 2007 seminar; (2) the ten point presentation used at the March 28, 2007 seminar; (3) the Consultation Sheet; (4) the Response Sheet; and (5) the Invitation. Each is analyzed below.

Validity of the Copyrights

To establish copyright infringement, AMS must show "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Service Co., 449 U.S. 340, 361 (1991); Berkic v. Crichton, 761 F.2d 1289, 1291 (9th Cir.), cert. denied, 474 U.S. 826 (1985) (to establish a successful copyright claim, a plaintiff must show ownership, access and substantial similarity). AMS moves for partial summary adjudication on the validity and infringement of its copyrights in the 10 Ways Seniors Program and related documents.

AMS submits three certificates of registration for the following titles: (1) THE TEN WAYS PEOPLE SCREW UP THEIR FINANCES, registered June 12, 2002; (2) 10 WAYS SENIOR SCREWS UP THEIR FINANCES, registered on October 4, 1999; and (3) FORMAL INVITE BLUE, registered May 8, 2007. (Reidelbach Decl., Plaintiff's Exhs. 1-6). "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. §410(c). To rebut the presumption [of prima facie validity], an infringement defendant must simply offer

some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement. Here, AMS has demonstrated that the THE TEN WAYS PEOPLE SCREW UP THEIR FINANCES and the 10 WAYS SENIOR SCREWS UP THEIR FINANCES copyrights were commenced within five years and therefore are presumptively valid. With respect to FORMAL INVITE BLUE, the identified date of first publication is November 1, 2001, which is about five years and six months before registration on May 8, 2007. (Plaintiff's Exh. 6). Notwithstanding, the court applies the same presumption to this claim as to the timely registered copyrights because McLaughlin possessed contractual notice that the materials received from AMS could not be copied pursuant to Paragraph B of the Licensing Agreement and actual notice that copyright protection was asserted with respect to the Invitation as it contained the international registration symbol ©.

In his opposition and moving papers, McLaughlin challenges the validity of the copyrights on several grounds. First, he contends that the presumption of validity should not apply in this case because AMS' copyright registration lacked material information. Section 409 of the Copyright Act requires that an application "shall include . . . in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered. . . ." 17 U.S.C. §409(9). Questions 6(a) and 6(b) require a registration applicant to make the disclosures mandated by §409.

In its copyright application for the 10 WAYS SENIOR SCREWS UP THEIR FINANCES, question 6(a) indicates that the material is derivative or a compilation and specifically states that "Some previously published text dating to November 1995." (Plaintiff's Exh. 1 at p.2). Question 6(b) responds that the material is an "Updated text [of the November 1995 materials]." Id. The court concludes that the responses to question 6 are consistent with Copyright Office Circular 14, "Copyright Registration For Derivative Works." Circular 14 emphasizes that question 6 need describe the

1  derivative work "briefly, in general terms," and provides several examples such as
2  "catalog – 6a: 1989 catalog; 6b: editorial revisions and additional material" and "sound
3  recording – 6a: music; 6b: new words, arrangement, and sounds." (Plaintiff's Exh. 36).
4  Here, AMS adequately described the preexisting material as "Some previously
5  published text dating to November 1995" and the material added by this work consists
6  of "updated text." This description, with respect to the 10 Ways Senior Program
7  materials, complies with §409.
8      With respect to the TEN WAYS PEOPLE SCREW UP THEIR FINANCES,
9  registered on June 12, 2002, AMS did not identify that the materials were either
10 derivative or compilations. Rather, AMS establishes that these materials are original
11 materials written, selected and arranged by Mr. Metcalfe. McLaughlin fails to present
12 sufficient evidence to show that the materials are not original materials. Consequently,
13 question 6 is not a relevant inquiry for original materials with respect to the June 12,
14 2002 registration and therefore McLaughlin fails to rebut the presumption of validity.
15     Second, McLaughlin contends that the handouts are not original and therefore
16 not entitled to copyright protection. For a work to be original, the requisite level of
17 originality is "extremely low; even a slight amount will suffice. The vast majority of
18 works make the grade quite easily, as they possess some creative spark, no matter how
19 crude, humble or obvious it might be." <u>Feist Publ'ns, Inc. v. Rural Tel Serv. Co.</u>, 499
20 U.S. 340, 345 (1990). Further, "[o]riginality does not signify novelty; a work may be
21 original even though it closely resembles other works so long as the similarity is
22 fortuitous, not the result of copying." <u>Id.</u> The Ninth Circuit has stated that the
23 definition of originality is "little more than a prohibition of actual copying." <u>Three
24 Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 489 (9th Cir. 2000). McLaughlin contends
25 that the ten point list, (Plaintiff's Exh. 1), is nothing more than a compilation of stock
26 financial cliches such as "Putting all your eggs in one basket," "paying too much in
27 taxes," etc. (Defendant's Motion at p.13). This argument is not persuasive. The
28 originality of the 10 Ways Senior Program is demonstrated by the arrangement,

selection, and identification of topics touching on financial considerations for seniors. The topic of senior financial considerations is extremely broad, consisting of subjective and objective factors, that could be expressed in numerous different ways. Seen in this light, the 10 Ways Senior Program satisfies the originality requirement.[3]

Third, McLaughlin challenges the Consultation Checklist, Response Form, and Invitation on the ground that blank forms are not afforded copyright protection and are not original. The Copyright Office does not copyright blank forms "which are designed for recording information and do not in themselves convey information." 37 C.F.R. § 202.1(c). Upon review of the Consultation Checklist and Invitation, (Plaintiff's Exh. 1 at pp. 15 and 20), the court concludes that the materials convey substantial information which distinguishes these forms from blank forms. These materials convey information regarding topics for consideration involved in financial planning for seniors. With respect to the Response sheet, the court concludes that genuine issues of material fact preclude entry of summary adjudication on this portion of AMS' copyright claim. The Response Form contains a request for the name, address, telephone number, and date of birth of the attendee. The Response Form also requests that the attendee list mutual funds and insurance companies for review. Furthermore, the Response Sheet is an integral part of the 10 Ways Senior Program and provides 10 numbered blank lines corresponding to the ten main topics of the program. While the Response Sheet is primarily and principally targeted to the collection of information, the court concludes that genuine issues of material fact preclude entry of summary adjudication on this portion of AMS' copyright claim.

In sum, the court grants partial adjudication in favor of AMS and against

---

[3] Harold Trimmer, counsel for McLaughlin, declares that he conducted a generalized internet search regarding such broad terms as "Do you know the ten most common mistakes Seniors make with the (sic) their money. (Trimmer Decl. ¶¶4-9). Trimmer declares that internet searches revealed, in some searches, millions of results. Id.. AMS objects to the evidence on the ground that the declaration is hearsay, argumentative, lacks foundation, and is not made on personal knowledge of the facts. The court concludes that Mr. Trimmer lacks personal knowledge of the materials he copied from the internet. Moreover, such a broad-based search with millions of hits, absent a further showing, does not support McLaughlin's argument that the 10 point lists are not copyrightable.

1  McLaughlin, concluding that the 10 Ways Seniors Program, Consultation Checklist,
2  and Invitation are afforded copyright protection. The court denies summary
3  adjudication with respect to the Response Sheet as it raises triable issues of fact.

4  <u>Infringement</u>

5  As set forth above, copyright infringement is established by showing (1)
6  ownership of a valid copyright and (2) copying of constituent elements of the work that
7  are original. <u>Feist</u>, 499 U.S. at 361. Copying can be shown by establishing that (1) the
8  defendant had access to the copyrighted work and (2) the defendant's work is
9  substantially similar in both ideas and expressions to the copyrighted work. <u>Litchfield
10 v. Spielberg</u>, 736 F.2d 1352, 1355 (9th Cir. 1984). Courts apply a two-step test to
11 determine whether a defendant's material is substantially similar to the copyrighted
12 work. <u>See Sid and Marty Kroft Television Productions, Inc. v. McDonald's
13 Corporation</u>, 562 F2d 1157, 1164 (9th Cir. 1977). The first step requires that there
14 "must be substantial similarity not only of the general ideas but of the expressions of
15 those ideas as well." <u>Id.</u> The second step requires that the manner in the idea is
16 expressed be substantially similarly. <u>See Lictchfield v. Spielberg</u>, 736 F.2d 1352, 1356
17 (9th Cir. 1984). At issue are the 10 point lists, Consultation Checklist, and Response
18 Sheet used by McLaughlin.

19 With respect to both 10 point lists used by McLaughlin, the court concludes that
20 AMS has demonstrated infringement by showing that there is no genuine issue of
21 material fact with respect to the materials distributed by McLaughlin on January 12,
22 2006 and March 28, 2006. McLaughlin had access to the copyrighted materials and
23 a comparison of the materials reveals that both the expression and ideas are conveyed
24 virtually identically. A side-by-side comparison of the 10 Ways Senior Program and
25 the January 12th handout reveals that AMS' materials were copied verbatim.
26 (Plaintiff's Exhs. 1, 18, 20). The March 28th materials circulated by McLaughlin
27 modifies the heading of each of the ten points by converting the statement into a
28 question. For example, topic 1 of AMS' materials states "Working Capital Not

Working"and McLaughlin's materials state "Do You Have Working Capital Not Working For You?" Both materials then list the same three subtopics, laid out in the same or virtually identical manner: "Reducing taxes," "Increasing Income," and "How to spend 'last dime on last day.'" Both headings convey the same general idea regarding working capital and then identify precisely the same expression and ideas by listing identical subtopics. Further, the size of type, spacing, and arrangement between the copyrighted work and McLaughlin's March 28, 2006 handout are virtually identical. The March 28, 2006 modifications to the materials are relatively minor and infringe AMS' protectable interests. Under these circumstances, the court concludes that there is no genuine issue of material fact that McLaughlin's 10 point lists distributed on January 12, 2006 and March 28, 2006 infringe AMS' copyrights.

With respect to the Consultation Checklist the court concludes that genuine issues of material fact preclude summary adjudication of this claim. Plaintiff's Consultation Checklist identifies eight general subtopics. (Plaintiff's Exh. 1 at p.15). McLaughlin's consultation checklist identifies six general subtopics. (Plaintiff's Exhs. 17, 20). The consultation checklists are markedly different. Of the eight topics identified by AMS, there is only one topic in common, "Additional Portfolio Review." Moreover, the text describing information related to this topic is materially different. The similarities consist of the same general title, "Consultation Checklist," and a layout consisting of bullet points highlighting the different subtopics. The court concludes that whether McLaughlin substantially copied both the ideas and expression presents a genuine issue of material fact. Summary adjudication of the Consultation Checklist is therefore denied.

With respect to the Response Sheets, the court declines to reach this issue until resolution of whether the Response Sheet is entitled to copyright protection in the first instance, as set forth above.

With respect to the Invitation, the court concludes that AMS has demonstrated that McLaughlin copied protectable elements of the Invitation. A comparison of the

1 invitations reveals that substantial portions of the invitation were copied verbatim.
2 (Plaintiff's Exhs. 12, 19). Consequently, there is no genuine issue of material fact with
3 respect to McLaughlin's infringement of the Invitation.
4    In sum, the court concludes that there is no substantial controversy that the 10
5 point lists of January 12, 2006 and March 28, 2006 infringed AMS' copyrights as did
6 McLaughlin's use of the Invitations. The court finds that genuine issues of material
7 fact preclude summary adjuciation of infringement with respect to the Consultation
8 Checklist and Response Sheet.
9    <u>Willful Infringement</u>
10    AMS also moves for partial summary judgment on the willfulness of
11 McLaughlin's conduct. Willful, within the meaning of 17 U.S.C. §504(c)(2), means
12 "with knowledge that the defendant's conduct constitutes copyright infringement."
13 <u>Peer Int'l Corp. v. Pausa Records, Inc.</u>,d 909 F.2d 1332, 1335 n.3 (9ty Cir. 1990). A
14 copyright owner may elect to pursue, instead of actual damages, an award of statutory
15 damages "in a sum of not less than $250 or more than $10,000" for each case of willful
16 infringement. 17 U.S.C. §504(c)(1).
17    AMS contends that it is entitled to summary judgment on the issue of willful
18 infringement based upon the following evidentiary submissions: (1) McLaughlin's
19 continued use of the copyrighted materials after notice and actual termination of the
20 Licensing Agreement; (2) the Licensing Agreement provided notice to McLaughlin of
21 what constituted infringing conduct; (3) he eliminated the copyright symbol from the
22 invitations; and (4) he made insignificant modifications to the invitation as
23 demonstrated by his approval of the printer's "proofs." (Plaintiff's Motion at p.22:67-
24 18).
25    In light of AMS' evidentiary showing, McLaughlin comes forward with evidence
26 to show that the notice received from AMS did not specifically mention use of
27 copyrighted materials, the notice was specifically targeted to the return of the original
28 binder containing the 10 Ways Senior Program, he only used the materials because they

1  had already been ordered from the printer, and he did not consider the bullet point list
2  to be confidential or proprietary. (McLaughlin Decl. ¶¶ 20-21, 23, 25). Under these
3  circumstances, the court concludes that genuine issues of material fact preclude
4  summary adjudication on the issue of willful infringement.

**The Trademark Infringement Claim**

6   McLaughlin moves for summary judgment on the trademark claim on grounds
7  that AMS's alleged trademark, TEN SMART IDEAS FOR A SLIGHTLY CRAZY
8  WORLD, is not registered and there is no evidence of confusion with McLaughlin's
9  program titles, "Ten Smart Ideas," used until December 2005, or "Smart Ideas," used
10 from January to September 2006.

11   To establish a trademark infringement claim under § 32 of the Lanham Act,
12 AMS must establish that it has a valid trademark and that defendants are "using a mark
13 confusingly similar to" AMS' mark. See Brookfield Communications, Inc. v. West
14 Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999). The plaintiff must
15 demonstrate that confusion between the parties' marks is probable, not merely a
16 possibility. See Murray v. Cable Nat. Broadcasting Co., 86 F.3d 858 (9th Cir.1996),
17 cert. denied, Murray v. Cable Nat. Broadcasting Co., 519 U.S. 1058 (1997); Rodeo
18 Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir.1987). "[D]istrict
19 courts should grant summary judgment motions regarding the likelihood of confusion
20 sparingly, as careful assessment of the pertinent factors that go into determining the
21 likelihood of confusion . . . requires a full record." Downing v. Abercrombie & Fitch,
22 265 F.3d 994, 1008 (9th Cir. 2001).

23   In determining likelihood of confusion, the issue is whether "the similarity of the
24 marks is likely to confuse customers about the source of the products." Official Airline
25 Guides v. Goss, 6 F.3d 1385, 1391 (9th Cir.1993). The Ninth Circuit has developed
26 eight factors, the so-called Sleekcraft factors, to guide the determination of a likelihood
27 of confusion. Those factors are: (1) strength of the marks; (2) proximity of the goods;
28 (3) similarities of the marks; (4) evidence of actual confusion; (5) marketing channels

used; (6) types of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341 (9th Cir.1979); <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1205 (9th Cir. 2000).

> A likelihood of confusion exists when a consumer viewing a service mark is likely to purchase the services under a mistaken belief that the services are, or associated with, the services of another provider. <u>Rodeo Collection, Ltd. v. West Seventh</u>, 812 F.2d 1215, 1217 (9th Cir.1987). The confusion must "be probable, not simply a possibility." <u>Id.</u> If goods or services are totally unrelated, there is no infringement because confusion is unlikely. <u>AMF v. Sleekcraft Boats</u>, 599 F.2d 341, 348 (9th Cir.1979).

<u>Murray v. Cable Nat. Broadcasting Co.</u>, 86 F.3d 858 (9th Cir.1996), <u>cert. denied</u>, 519 U.S. 1058 (1997).

<u>Strength of Mark</u>

"A mark's overall strength is relative and cannot be determined by mechanistically assessing its conceptual or commercial strength.' <u>M2 Software, Inc. v. Madacy Entertainment</u>, 421 F.3d 1073, 1081 (9th Cir. 2005). A mark is categorized as either 1) generic; 2) descriptive; 3) suggestive; and 4) arbitrary or fanciful. <u>Filipino Yellow Pages, Inc. v. Asian Journal Pub. Inc.</u>, 198 F.3d 1143, 1146 (9th Cir. 1999) (citing <u>Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.</u>, 601 F.2d 1011, 1014 (9th Cir.1979)). A generic term, also known as a common descriptive term, refers to the type or species of the product at issue. <u>Id.</u> at 1147. Generic terms cannot be protected trademarks. <u>Id.</u> Descriptive terms "generally do not enjoy trademark protection" but may be protected if they acquire " 'secondary meaning' in the minds of consumers, i.e., [they] become distinctive of the trademark applicant's goods in commerce." <u>Id.</u> Marks that are suggestive, arbitrary or fanciful can be protected without demonstrating secondary meaning. <u>See</u> <u>AMF, Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 349 (9th Cir.1979). Where, as here, an allegedly valid trademark has not been registered with the PTO, the plaintiff bears the burden of persuasion that the mark is not generic. <u>Filipino Yellow Pages</u>, 198 F.3d at 1146.

Here, AMS' mark – whether categorized as either a suggestive or descriptive

1  mark, is conceptually weak.  The marks, TEN SMART IDEAS FOR A SLIGHTLY
2  CRAZY WORLD and SMART IDEAS FOR A SLIGHTLY CRAZY WORLD, are
3  very broad and could apply to virtually any product or service.  To strengthen its mark,
4  AMS comes forward with evidence to show that approximately $19 million has been
5  spent on mailing approximately 50,000,000 direct mail pieces to consumers.  (Harter
6  Decl. ¶4; Ackerstein Decl. ¶5-7).  The impact of such mailings (and whether or not the
7  trademarks have secondary meaning, in the case of a descriptive mark) is unclear
8  because the Invitations primarily promote independent insurance brokers, and not
9  AMS.  In general, a weak mark is "entitled to a restricted ranges of protection."
10 Sleekcraft, 599 F.2d at 350.  This factor favors McLaughlin.

Proximity of the Goods

12 McLaughlin contends that the goods and services are not related.  AMS provides
13 "marketing support to independent sales agents," (Akerstein Decl. ¶2), whereas
14 McLaughlin markets financial advice and insurance products to senior citizens.  The
15 court concludes that the end consumers for both parties' products is the same: senior
16 citizens who require financial advice.  This factor favors AMS.

Similarity of the Marks

18 The similarity of marks "has always been considered a critical question in the
19 likelihood-of-confusion analysis." See GoTo.com, 202 F.3d at 1205.  Similarity of
20 marks is assessed "in terms of their sight, sound, and meaning."  Official Airline
21 Guides, Inc. v. Goss, 6 F.3d 1385, 1392 (9th Cir.1993) (citations omitted).  Moreover,
22 the trademark is not judged by an examination of its parts, but rather "the validity and
23 distinctiveness of a composite trademark is determined by viewing the trademark as a
24 whole, as it appears in the marketplace."  Id.
25 Here, the marks used by the parties, viewed as a whole, are not significantly
26 similar.  The use of the phrase "FOR A SLIGHTLY CRAZY WORLD" by AMS sets
27 the parties' trademarks apart.  McLaughlin has used the titles "Ten Smart Ideas" and
28 "Smart Ideas" to describe his presentation.  This factor favors McLaughlin.

### Evidence of Actual Confusion

In support of this factor, AMS submits evidence consisting of a letter from an AMS subscriber forwarding a copy of McLaughlin's Invitation received by the subscriber's father. (Plaintiff's Exh. 2). McLaughlin argues that the AMS subscriber and his father were not actually confused because the subscriber knew that McLaughlin was no longer associated with AMS. The inference to be drawn, McLaughlin concludes, is that there is no evidence of actual confusion. As the weight of this factor cannot be assessed absent resolution and further development of the record, this factor is neutral, neither favoring one party nor the other.

### Marketing Channels

The parties dispute whether the marketing channels used target the same consumers. McLaughlin argues that AMS primarily targets its products to independent insurance brokers and that he primarily targets the end user. The court notes the trademarks at issue are targeted to reach the same end user (senior citizens with financial interests) for the same purpose: earning commissions on the sales of insurance and investment products. On the present limited record, this factor favors AMS.

### Types of Services and Purchaser Care

While the types of services offered by the parties are similar, AMS does not identify any evidence supporting the purchaser care factor. Accordingly, the court gives little weight to this factor.

### Defendant's Intent

McLaughlin declares that he used the materials because they had been pre-ordered from the printer and that by January 2006 he used the program title "Smart Ideas," which he later modified to "Simple Solutions." (McLaughlin Decl. ¶21). AMS contends, citing Exhibit 22, that McLaughlin admitted at his deposition that AMS granted him permission to use the program title "Ten Smart Ideas." (AMS's Oppo. at p.20:5). The court notes that Exhibit 22 does not contain the cited page, 92, and therefore there is a failure of evidence on this factor. As the weight of this factor

cannot be assessed absent resolution and further development of the record, this factor ostensibly favors McLaughlin.

### Likelihood of Expansion

AMS does not submit any evidence in support of this claim. McLaughlin explains that he is no longer using the materials and therefore there is no future likelihood of expansion. This factor favors McLaughlin.

In light of the assessment of the <u>Sleekcraft</u> factors, the court concludes that genuine issues of material fact prevent entry of summary adjudication on the likelihood of confusion element as to all claims for trademark infringement.

**Claims for Unfair Competition and Declaratory Relief**

McLauglin moves for summary judgment on the claims for unfair competition and declaratory relief on the general ground that "AMS cannot prove any of the complained of wrongdoing," (Motion at p.24:19-20, 23:27-28). For the reasons set forth above, this argument is not persuasive as the court has granted in part and denied in part the parties' motions for summary judgment or summary adjudication on the copyright and trademark claims. The motion for summary judgment on these claims is denied.

To summarize the court's rulings:

(1) On the breach of contract claim, the court finds that it is without substantial controversy that (a) the parties entered into the Licensing Agreement; (b) McLaughlin breached Paragraph B of the Licensing Agreement when he distributed the January 12, 2006 and March 28, 2006 materials; and (c) McLaughlin complied with the contractual obligation to return the allegedly missing original binder to AMS upon termination of the parties' contractual relationship.

(2) On the copyright claim, the court finds that it is without substantial controversy that the 10 Ways Seniors Program, Consultation Checklist, and Invitation are afforded copyright protection but that there are genuine issues of material facts precluding summary adjudication on whether the Response Sheet is afforded copyright

protection. On the issue of infringement, the court finds that there is no substantial controversy that McLaughlin infringed AMS's copyright by (a) distributing the 10 point lists on January 12, 2006 and March 28, 2006 and (b) distributing the Invitation. The court also finds that genuine issues of material fact preclude summary adjudication on whether the Consultation Checklist and Response Sheet infringe AMS' copyrights.

(3) On the issue of willful infringement, the court finds that genuine issues of material fact preclude summary adjudication of this issue.

(4) On the trademark infringement claim, the court concludes that genuine issues of material fact preclude summary adjuciation of this issue.

(5) On the unfair competition and declaratory relief claims, the court finds that genuine issues of material fact preclude summary judgment on these claims.

**IT IS SO ORDERED.**

DATED: ___8/17___, 2007

JEFFREY T. MILLER
United States District Judge

cc: All parties